OPINION OF THE COURT
Wayne P. Saitta, J.
Defendants, Simon Basse doing business as A.M.S. Company, Cary Dean Hart doing business as C.D. Hart Designs Company, Jeff Gleason, Cynthia Rothschild, Barbara Schulman and Ryan Monihan, move this court for an order pursuant to CPLR 3212 for summary judgment against the plaintiff, and plaintiff cross-moves for summary judgment on its action to eject the defendants.
Defendants’ motion for summary judgment is granted and the plaintiffs cross motion for summary judgment is denied for the reasons set forth below.
Facts
Plaintiff brought this action to eject the defendants from a property located at 223 15th Street, Brooklyn, NY 11215 (the premises or the building). The building is a four-story structure containing one unit on each floor. The building is built to within two feet of the rear lot line and has no rear yard. The certificate of occupancy issued in 1964 indicates that the building was used as a musical instrument repair shop, for storage, and as a caretaker’s apartment and office. Plaintiff entered into a five-year triple-net lease for the period of February 1, 1991 through January 31, 1996 with Cary Dean Hart, doing business as C.D. Hart Designs Company, and Simon Basse, doing business as A.M.S. Company. The lease was extended several times through December 31, 2005.
Plaintiff alleges that the defendants used the building as residences, and not for the commercial purposes for which it was leased, and that the defendants did so without the permission or knowledge of the plaintiff.
Defendants applied to the Loft Board for protection of their right to remain in the building pursuant to the Loft Law, alleging they had occupied the property for residential purposes from April 1, 1980. That application, made prior to the June 2010 amendment of Loft Law, is presently inactive.
*501 Defendants submit affidavits of Simon Basse, resident of the 2nd floor unit of the building, Jeff Larvia, resident of the 1st floor unit, Cynthia Rothschild, resident of the 3rd floor unit, and Ryan Monihan, who resides in the 4th floor unit. Each affiant states he or she resided in the building during the entire period of the amended Loft Law, from January 2008 through December 2009, that each unit is configured for residential use, that each unit exceeds 550 square feet, and that each unit has windows facing the street and a doorway into a hall. Each affiant submitted federal and state tax returns to demonstrate that they resided in the building during the requisite period of January 2008 through December 2009.
In January 2009, plaintiff submitted plans to legalize the building for residential use to the New York City Department of Buildings (DOB). The DOB rejected the plans on the grounds that the rear windows of the building were not at least five feet from the rear lot line.
Defendants move for summary judgment dismissing plaintiffs ejectment action. Plaintiff cross-moves for summary judgment, seeking an order of ejectment, requiring the defendants to vacate the premises.
Arguments
Defendants argue that plaintiff is not entitled to eject them because the building is covered by the Loft Law and because the question of whether the building can be legalized for residential purposes should be referred to the Loft Board.
Plaintiff argues that the building cannot be legalized for residential use because the rear windows are less than five feet from the rear lot line. It argues that as a result, the building cannot be deemed an interim multiple dwelling and is otherwise not subject to rent regulations, and therefore plaintiff is entitled to eject the defendants. Plaintiff also argues that since the defendants seek relief in the Supreme Court, they are precluded from seeking relief from the Loft Board.
Defendants contend that the building can be altered to comply with the requirements of the Multiple Dwelling Law. Defendants also state the plaintiff, not the defendants, chose the Supreme Court as a venue when it sought to eject the defendants, so they are not precluded from seeking relief at the Loft Board.
*502 Analysis
The court has the jurisdiction to determine whether the subject building is covered by the Loft Law. (County Dollar Corp. v Douglas, 160 AD2d 537 [1st Dept 1990]; O’Flaherty v Schwimmer, 158 Misc 2d 420 [Sup Ct, NY County 1993].)
Based on the evidence submitted in the moving papers, it is clear that the subject building is an interim multiple dwelling as defined by section 281 (5) of the Multiple Dwelling Law. It is not contested that the building’s 1964 certificate of occupancy was for commercial use and that the building currently does not have a residential certificate of occupancy. Further, defendants have demonstrated that they occupied the building for residential purposes during 12 consecutive months between January 1, 2008, and December 31, 2009, in accordance with the requirements of Multiple Dwelling Law § 281 (5). Plaintiff has adduced no evidence to raise a question of fact as to whether the building was occupied for manufacturing, commercial or warehouse purposes, whether each unit is at least 550 square feet and opens onto a hallway, or to contest defendants’ evidence that they occupied their units as residences from January 1, 2008 to December 31, 2009.
Plaintiff’s motion for summary judgment to eject the defendants because the building cannot be legalized for residential occupancy, despite the building being an interim multiple dwelling covered under the Loft Law, must fail as plaintiff has not demonstrated that the residential use of the building cannot be legalized.
The building sits on a lot which is 20 feet by 71 feet, 3 inches on the west, and 70 feet, 9.5 inches on the east. The unbuilt space at the rear of the lot is an irregularly shaped piece of land which has a depth of between six inches and one foot, four inches.
The New York City DOB rejected a plan to legalize the building submitted by plaintiff, listing as an objection a violation of Multiple Dwelling Law, article 7B, § 277 (7) (b) (i).
Plaintiff submitted a supplemental affidavit by architect Harry A. Meltzer which stated that Multiple Dwelling Law § 277 (7) (b) (i) (E) requires that the distance between the windows and the rear lot line must be no less than five feet. He gives his professional opinion that the violation of Multiple Dwelling Law § 277 (7) (b) (i) (E) is insurmountable, and that the building cannot be legalized for residential usage in any reasonable manner as required under the Loft Law.
*503 However, Multiple Dwelling Law § 277 (7) (b) (i) (E) is not an absolute bar to having windows less than five feet from a rear lot line. Section 277 (7) (b) (i) (E) is one of six clauses of section 277 (7) (b) (i). Section 277 (7) (b) (i) requires all dwelling units to have at least one window, which meets the requirements of one of any of the six clauses.
Thus, the language of clause (E) that “in no event shall the distance between such windows and the rear lot line be less than five feet” (emphasis added) must be read to mean that any windows used to satisfy the requirement of section 277 (7) (b) (i) must be at least five feet from the rear lot line.
Defendants’ architect, John Furth Peachy, does not dispute that the building as currently built violates the air and light mandates of the Multiple Dwelling Law. Rather Peachy states in his affidavit that the plan Meltzer submitted was inadequate, and that the rejection of Meltzer’s plan does not mean the building cannot be legalized.
Peachy submitted plans and drawings for three proposals as to how the building could be altered to comply with the building code.
The first alteration would involve the removal of three feet, eight inches of the rear of the building, which would provide the five-foot lot clearance at the rear of the building. This would permit the rear windows to be used to meet with the requirement of Multiple Dwelling Law § 277 (7) (b) (i) (E) for sufficient light and air, by creating a five-foot rear yard.
The second proposed modification would require the owner to recess the windows by three feet, eight inches, and create porches in order to have the rear windows five feet from the rear lot lines. This would permit the plaintiff to keep the rear structure of the building intact.
The third proposal involves meeting the requirements of Multiple Dwelling Law § 277 (7) (b) (i) by reconfiguring the interior layout of the building, and utilizing the windows in the front of the building. This proposal would move the living space to the front of the building where there are windows opening onto the street, and by using the rear of the building for nonliving/storage space. Thus, required light and air would be provided by the front rather than the rear windows.
Multiple Dwelling Law § 277 (7) (b) (i) requires that every dwelling unit have one or more windows which meet the requirements of any one of six subsequent clauses. Pursuant to *504 the first clause, titled (A), the requirement can be met by windows which open onto the street. This is consistent with the provisions of Multiple Dwelling Law § 281 (5) which includes as interim multiple dwellings, units that have at least one window opening to the street. While section 281 does not eliminate the requirement that such units must be brought into compliance with section 277 (7), both sections 281 (5) and 277 (7) (b) (i) (A) allow for light and air to be provided by one window opening onto the street. The unit on the first floor has one window opening onto the street and each of the other three units has two windows opening onto the street. Thus, if the location of the living rooms are moved, the rear windows are not needed to meet the light and air requirements of section 277 (7) (b) (i).
Section 277 (7) (b) (ii) sets forth the minimum amount of window area opening onto a street required for each living room. It does not require windows for each room, only for each living room. Clause (A) of section 277 (7) (b) (ii) sets the minimum opening for living rooms less than 500 square feet at 10% of the floor area. Thus if the living rooms were relocated to the front of the building, the front windows would satisfy the requirements of section 277 (7) (b) (ii).
Meltzer argues that the proposal to demolish part of the rear of the building is unreasonable and excessively expensive and physically impracticable, but fails to include in his affidavit any costs or specific engineering difficulties which support this conclusion. Furthermore, Meltzer does not address the feasibility of the other two alternatives of moving the rear windows and creating porches, or of reconfiguring the layout of the rooms within each unit.
Plaintiff has failed to demonstrate that the building cannot be legalized, while the defendants have demonstrated that the building is covered by the Loft Law. Therefore, defendants are entitled to summary judgment dismissing the ejectment action. (Nirco Invs. Corp. v New York City Loft Bd., 131 AD2d 325 [1st Dept 1987].)
While plaintiff has failed to demonstrate that the building cannot be legalized for residential use, issues concerning the specific manner in which the building should be legalized must be addressed to the DOB and to the New York City Loft Board. While this court has concurrent jurisdiction with the Loft Board to resolve disputes involving article 7 of the Multiple Dwelling Law, deference to an administrative agency is appropriate where it has the particular expertise to dispose of the issue. (Eli *505 Haddad Corp. v Redmond Studio, 102 AD2d 730 [1st Dept 1984].)
The Loft Board has established procedures with which building owners must comply, prior to obtaining a permit from the Department of Buildings for the alteration of the building. Among the procedures, the owner’s legalization plans are subject to review and a mediation process through which disputes over the specifics of a legalization plan may be resolved. Similarly, applications for extensions of time to complete the legalization process or for rent increases, and adjustments to recoup code compliance costs, are properly brought before the Loft Board. Having specific procedures in place, the court defers to the Loft Board’s expertise and process in determining the details of the manner in which the building is legalized.
Wherefore, defendants’ motion to dismiss plaintiff’s ejectment action is granted and plaintiffs cross motion for summary judgment is denied and it is ordered that plaintiffs complaint is dismissed.